JUDGE DAVID BRIONES

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

FILED

2022 DEC 13  PM 4: 15

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

| | |
|---|---|
| **YAZMIN GONZALEZ** §<br><br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>**FIDELITY FUNDING GROUP, LLC** a New §<br>Jersey Limited Liability Company §<br>§<br>**Defendants.** §<br>§ | **EP22CV0453** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      Plaintiff is YAZMIN GONZALEZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all automated text messages, in this case in El

Paso County, Texas

2.      Defendant FIDELITY FUNDING GROUP, LLC. ("Fidelity") is a Limited Liability

Company organized and existing under the laws of New Jersey with a principal address at 107

Tindall Road, Middletown, NJ 07748 and can be served via registered agent Michael Rose at 5

Joyce Court, Manalapan, New Jersey 09926 or 1000 Schindler Dr, Apt 129, South Amboy, NJ

08879.

3.      Defendant MICHAEL ROSE ("Rose") is natural person, resident of New Jersey,

managing member of Defendant Fidelity and can be served at 1000 Schindler Dr, Apt 129, South

Amboy, NJ 08879.

4.      Defendants Fidelity and Rose are hereinafter referred to collectively as ("Defendants").

### JURISDICTION AND VENUE

1

5.     **Jurisdiction**.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053

because that claim arises from the same nucleus of operative fact, i.e., Defendants' tele market in

robocalls to Plaintiff; adds little complexity to the case.

6.     **Personal Jurisdiction.**  This Court has specific personal jurisdiction over the defendant

because they have repeatedly placed calls to Texas residents, derive revenue solicitating their

goods and services to Texas residents, including the Plaintiff.

7.     **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when he received a

substantial if not every single automated text message from Defendants that are the subject

matter of this lawsuit.

8.     This Court has venue over the defendants because the automated text messages at issue

were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

9.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

2

1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

*Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer: (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

21.     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

4

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

22.     Plaintiff personally registered her phone number ending in 1859 on the National Do Not Call Registry successfully since March 2022.

23.     Defendants routinely violate the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

24.     Plaintiff did not have a prior existing business relationship and had never been a customer or client of Defendant Fidelity.

25.     Plaintiff does not own any business and was not ever interested in obtaining business funding.

26.     Defendant had no reason to contact Plaintiff for business funding because Plaintiff does not own a business.

27.     Defendant Fidelity is a loan broker and offers merchant cash advances, small business loans, credit card processing, equipment financing and other financial services nationwide including Texas.

28.     Plaintiff received unsolicited phone calls and text messages to her personal phone number ending in-1859 from November 8, 2022, to November 29,2022, from Defendants representatives soliciting business funding services on behalf of Defendant Fidelity ("the calls").

29.     Plaintiff received the first call on November 8, 2022, the agent behind the call identified himself as "John from Fidelity" who then asked about business revenues, Plaintiff's credit score and other qualifying questions for business funding. Plaintiff pretended to be interested in order to determine who was making the unsolicited and anonymous phone call.

30.     Plaintiff received an email from John from email jdwyer@fidelity-funding.com containing a link for a funding application. *See Exhibit A.*

31.     The email Plaintiff received from John revealed the company responsible for the calls.

32.     On November 8, 2022, at 2:30 PM MST Plaintiff replied to John's text message stating, "I'm not interested, please stop calling." *See Exhibit B.*

33.     On the same day Plaintiff received four (4) additional calls from Defendants' agents soliciting business funding.

34.     On November 9, 2022, Plaintiff received three (3) additional calls and one text message.

35.     On November 9, 2022, at 11:17 AM Plaintiff replied to another text message saying, "I'm not interested please stop calling." *See Exhibit B.*

36.     On November 10, 2022, Plaintiff received an email from another representative from Defendants named Christian Ramirez from email address christian@fidelity-funding.com following up, which Plaintiff replied and stated, "I am not interested. If you could please remove my number from your list." *See Exhibit C.*

37.     Plaintiff made a total of three (3) do not call requests to Defendants.

38.     From November 15, 2022, to November 29, 2022, Defendants' agents continued harassing Plaintiff with calls and text messages.

39.     Table below displays the calls made to Plaintiff by Defendants:

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 11/08/2022 | 11:43 AM | 732-788-9903 | John, sent email |
| 2. | 11/08/2022 | 12:55 PM | 732-788-9903 | Text |
| 3. | 11/08/2022 | 3:00 PM | 908-669-7733 | George, call dropped |
| 4. | 11/08/2022 | 3:05 PM | 908-365-3561 | Christian, sent email |
| 5. | 11/08/2022 | 3:26 PM | 908-365-3261 | Missed call |
| 6. | 11/08/2022 | 4:21 PM | 908-365-3261 | Text |
| 7. | 11/09/2022 | 7:30 AM | 732-788-9903 | Missed call |
| 8. | 11/09/2022 | 9:02 AM | 908-290-1200 | Text |
| 9. | 11/15/2022 | 4:00 PM | 732-801-0841 | Steven, sent email |
| 10. | 11/16/2022 | 8:10 AM | 732-788-9903 | Missed call |
| 11. | 11/16/2022 | 8:10 AM | 732-788-9903 | Text |
| 12. | 11/17/2022 | 8:27 AM | 732-788-9903 | Missed call |
| 13. | 11/29/2022 | 9:46 AM | 732-801-0841 | Text |

40.     On December 5, 2022, Plaintiff searched the Texas Secretary of State website

https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas

Solicitation Registration from Defendants Fidelity or Rose as required by Texas Business and

Commerce Code 302.101.

41.     Defendants do not qualify for an exemption under TX Bus. Com. Code 302.101.

42.     No emergency necessitated the calls.

43.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming

telemarketing calls consumed part of this capacity.

**PERSONAL LIABILITY OF DEFENDANT ROSE**

44.     Defendant Rose is personally liable under the "participation theory" of liability because he had direct and personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

45.     At all times material to the Complaint, acting alone or in concert with others, Defendant Rose has formulated, directed, controlled, had the authority to control, and participated in the acts and practices of Defendant Fidelity, to include the acts or practices set forth in this Complaint.

46.     Rose knew, or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the phone calls were sent, and despite this fact, Rose made the decision to call Plaintiff's cell phone number without his prior express written consent.

47.     Rose makes the day-to-day decisions for Fidelity.

48.     Rose made the decision to target Texas telephone numbers for telemarketing purposes including calls to Plaintiff's number.

49.     Rose is also personally liable because he was responsible for ensuring Fidelity's agents and/or employees do not solicit consumers with whom no prior business relationship existed.

50.     "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd Cir.1985).

51.     The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort]

rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

52.     Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.  Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.  As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct.  Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations.  They were the two persons who controlled all of Blastfax's day-to-day operations.  They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct.  And they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued to direct their company to send unsolicited intrastate fax advertisements.  This is fare more than a simple derivative liability case.  Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

53.     The Same Court held that corporate's officer personally liable for DTPA violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37

(Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

54.     Defendant Rose is the CEO, principal member, and an operator of Fidelity that controls the day-to-day operations of Fidelity and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls and to solicit business funding.

55.     Defendant Rose approves the telemarketing scripts, signs the contracts, pays commissions for the illegal behavior, and directs illegal calls to be made for Fidelity's financial benefit.

56.     Defendant Rose is not a mere bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal behavior.

57.     Defendant Rose is well aware this conduct violates the TCPA and Tex. DPTA and refuses to alter the behavior. Mr. Rose is the CEO of Fidelity and the only person with the power to make the unlawful behavior stop. Yet, he has not taken any precautionary measures to stop the behavior because the behavior financially benefits him. Defendant Rose breaks the law with his eyes and pocketbooks wide open.

58.     Defendants Rose and Fidelity have operated as a common enterprise while engaging in deceptive acts and practices and violations of law alleged herein. Defendant Rose has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Fidelity that constitute a common enterprise.

59.     Defendant Rose and Defendant Fidelity should be held jointly and severally liable for

10

both the TCPA violations and Tex. Bus. Com. Code 302.101 via Tex. DTPA because they committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

60.    Defendant Rose should be held liable because to do otherwise would allow him to simply dissolve Defendant Fidelity and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

61.    The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

62.    The calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

63.    The calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

64.    Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER**

65.    The calls were to Plaintiff's cellular phone ending in -1859 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

11

## Violations of the Texas Business and Commerce Code § 302.101

57.     The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

58.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

59.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

60.     Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

61.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

## I.     FIRST CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

62.     Ms. Gonzalez realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

64.     Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

65.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## II.      SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

66.     Ms. Gonzalez incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

67.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without her prior express written consent.

68.     Ms. Gonzalez is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

69.     Ms. Gonzalez is entitled to all reasonable attorneys' fees, deposition costs, and discovery costs. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

        WHEREFORE, Plaintiff prays for judgment against the Defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1,500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 13 calls;

E.    An award of $5,000 in statutory damages arising from eight (8) violations of the Texas Business and Commerce code 302.101.

F.    An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

G.    An award to Ms. Gonzalez of interest, costs, and attorneys' fees, as allowed by law and equity

H.    Such further relief as the Court deems necessary, just, and proper.

December 13, 2022

Respectfully submitted,

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859
yazminsoto580@gmail.com

JUDGE DAVID BRIONES

EP22CV0453

# EXHIBIT A

Gmail - We Just Spoke.

 Gmail

Yazmin Soto <yazminsoto580@gmail.com>

**We Just Spoke.**

3 messages

John Dwyer <jdwyer@fidelity-funding.com>
To: "yazminsoto580@gmail.com" <yazminsoto580@gmail.com>

Tue, Nov 8, 2022 at 11:52 AM

 **Fidelity** FUNDING

Fidelity Funding is a team of private investors who provide working capital in numerous forms to small to large sized businesses located within the United States. Specializing in Term Loans, Equipment Financing & Leasing, Merchant Cash Advances, Lines of Credit and programs of many different varieties, Fidelity Funding has established itself as a true innovator in the field showcasing its creativity by an unparalleled customer experience, and industry leading rates.

Documents Needed For Funding!

- APPLICATION FILLED OUT ( At the Bottom Click "APPLY HERE" )
- 3 MONTHS BUSINESS BANK STATEMENTS (AUGUST 2022-OCTOBER 2022)

Click the link below that says APPLY HERE to complete our DocuSign application and respond back with the last 3 months business bank statements.

Whether we are giving you a brand new first position, buying out a previous position or just an extra influx of capital for the business, I look forward to working with you and building a strong business relationship to grow your business for years to come!

Apply Here!

**John Dwyer**
Sr. Funding Specialist
Direct: 732-788-9903
Office: 212-634-9121
Fax: 929-581-1881

**Fidelity Funding**
107 Tindall Road, Middletown, NJ 07748
www.fidelity-funding.com


Your Business. Your Future.
Take Control of Your Business Growth Today

# EXHIBIT B



Hello John, no I don't have any questions. Sorry, I'm not interested please stop calling. Thank you



# EXHIBIT C

 Gmail

**Yazmin Soto <yazminsoto580@gmail.com>**

## Funding Request
3 messages

**Christian Ramirez** <Christian@fidelity-funding.com>                    Tue, Nov 8, 2022 at 3:09 PM
To: "yazminsoto580@gmail.com" <yazminsoto580@gmail.com>
Cc: George Cieza <george@fidelity-funding.com>, "yazminsoto@gmail.com" <yazminsoto@gmail.com>,
"vanitynailsbar@gmail.com" <vanitynailsbar@gmail.com>



Hey Yazmin,

Good afternoon, thank you for getting back to me. Per our phone conversation please submit your last 3 months of business statements for review. Our approval process is very quick, and I can have a proposal for your consideration within the hour.

Please submit Aug to Oct and I'll get to work on this for you now

Your credit will not be pulled or impacted by applying, this is very much a risk-free application process.

Please let me know if you have any questions!

Application link here:

Apply Here!

**Christian Ramirez**
Funding Specialist
Direct: 908-365-3261
Office: 212-634-9121
Fax: 929-581-1881

**Fidelity Funding**
107 Tindall Road, Middletown, NJ 07748
www.fidelity-funding.com



---

**Christian Ramirez** <Christian@fidelity-funding.com>        Thu, Nov 10, 2022 at 10:54 AM
To: "yazminsoto580@gmail.com" <yazminsoto580@gmail.com>
Cc: George Cieza <george@fidelity-funding.com>, "vanitynailsbar@gmail.com" <vanitynailsbar@gmail.com>



Hey Yazmin,

Good afternoon, I just wanted to follow up here. Are you still interested in additional funding at this time?

We would just need a recent set of 3 months business bank statements for review, and I'd have an offer for you within an hour.

I can also get you a line of credit, or a working capital loan with lower rates than before.

**Apply Here!**

**Christian Ramirez**
Funding Specialist
Direct: 908-365-3261
Office: 212-634-9121
Fax: 929-581-1881

**Fidelity Funding**
107 Tindall Road, Middletown, NJ 07748
www.fidelity-funding.com



[Quoted text hidden]

---

**Yazmin Soto** <yazminsoto580@gmail.com>                                    Thu, Nov 10, 2022 at 11:08 AM
To: Christian Ramirez <Christian@fidelity-funding.com>

Hello Christian, I am not interested. If you could please remove my number from your list.

Thank you.
[Quoted text hidden]